```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
IN RE MATTHEW N. MURRAY                                     :
                                                            :
                                    Debtor.                 :
                                                            :           16-CV-771 (VSB)
------------------------------------------------------------X
                                                            :         MEMORANDUM & OPINION
WILK AUSLANDER LLP,                                         :
                                                            :
                                    Appellant,              :
                                                            :
             -v-                                            :
                                                            :
MATTHEW N. MURRAY,                                          :
                                                            :
                                    Appellee.               :
                                                            :
------------------------------------------------------------X
```

Appearances:

Eric J. Snyder
Wilk Auslander LLP
New York, New York
*Counsel for Appellant*

Tracy L. Klestadt
Brendan M. Scott
Klestadt, Winters, Jureller, Southard & Stevens LLP
New York, New York
*Counsel for Appellee*

VERNON S. BRODERICK, United States District Judge:

      Appellant and Petitioning Creditor Wilk Auslander LLP[1] appeals the Decision and Order of the Bankruptcy Court for the Southern District of New York (Gerber, *B.J.*) granting the motion of Appellee and Alleged Debtor Matthew N. Murray and dismissing the involuntary

---

[1] Wilk Auslander LLP is acting as both Appellant and its own counsel.

bankruptcy petition pursuant to § 707(a) of Title 11 of the United States Bankruptcy Code.  For the reasons stated herein, the appeal is DISMISSED and the Bankruptcy Court's decision is AFFIRMED.

## I.      Factual Background[2]

This case relates back to a 2006 dispute between Murray and his former employer, Rodman & Renshaw.  While employed by Rodman & Renshaw, Murray made certain disclosures about what he believed to be improper business practices within the company to the United States Senate Finance Committee.  (App'x 45-47.)[3]  He was fired shortly thereafter and contributed to two *New York Times* articles about the alleged improper practices.  (*Id*. at 47-48.)  Rodman & Renshaw commenced arbitration proceedings before the Financial Industry Regulatory Authority ("FINRA") alleging, *inter alia*, defamation and breach of contract.  (*Id.* at 48.)  Wilk Auslander (the "Law Firm") represented Rodman & Renshaw in the FINRA arbitration proceedings.  The FINRA panel issued an award in favor of Rodman & Renshaw in the amount of $10.7 million, which, with prejudgment interest, later grew to $16 million.  (*Id.*)  The FINRA arbitration award was confirmed by the New York State Supreme Court, and affirmed by the Appellate Division (the "Judgment").  (*Id.* at 48-49.)

After the Judgment was entered against Murray, the Law Firm, still representing Rodman & Renshaw, engaged in post-judgment discovery of Murray's assets and liabilities.  (*Id.* at 49.)  Murray and his wife each served responses, which demonstrated that Murray is unemployed and his only material asset is an interest in a tenancy by the entirety that he shares with his wife in a

---

[2] The Bankruptcy Court relied on the undisputed facts described herein, as do I.  (App'x 420 n.3.)  Except for the sole creditor issue, described more fully below, Appellant does not contest the Bankruptcy Court's recitation of undisputed facts.

[3] "App'x" refers to Appellant's Appendix.  (Doc. 11.)

cooperative apartment they live in with their two daughters.  (*Id.* at 49, 51.)  The shares that represent the interest in the apartment are encumbered by a mortgage held by Bank or America, N.A. in the approximate amount of $590,000.  (*Id.* at 51, 11.5)  The apartment was appraised at approximately $2.98 million as of January 2013.  (*Id.* at 51.)  In February 2014, Appellant had it appraised at approximately $4.6 million.  (*Id.* at 11.6.)

On January 11, 2013, Rodman & Renshaw filed for voluntary Chapter 7 bankruptcy.  (*Id.* at 422 (citing *In re Rodman & Renshaw LLC*, No. 13-10087 (REG) (Bankr. S.D.N.Y.).)  Pursuant to an agreement settling outstanding legal fees, the Rodman & Renshaw bankruptcy trustee assigned the Judgment to the Law Firm, provided that Rodman & Renshaw would share in any recovery on it.  (*Id.* at 335-40.)  After the assignment, the Law Firm caused the New York County Sheriff's Office to levy on Murray's shares in the cooperative apartment, thereby securing a lien on them effective February 26, 2013.  (*Id.* at 249-51.)

## II.    **Procedural History**

The Law Firm commenced this action by filing an Involuntary Petition on February 6, 2014, which it amended the next day.  (*Id.* at 9-11.)  As explained by Judge Gerber, and admitted by Appellant, the Law Firm—despite already having secured a lien—sought to pursue bankruptcy remedies, rather than rely on state law judgment enforcement mechanisms, so that it could force the sale of the apartment:

> As a judgment creditor, the Law Firm has the ability, under non-bankruptcy law (here, New York law), to execute on Mr. Murray's interest in the Apartment and to cause it to be sold in a judgment execution sale.  But the judgment the Law Firm acquired was solely against Mr. Murray—and not against his wife.  And the sale of Mr. Murray's interest alone would fetch less in a sale than it would if he were the sole owner, because New York state law respects the rights of a tenant by the entirety.  New York law would permit the Law Firm to execute on Mr. Murray's interest in the Apartment, but not the entire interest held by both Mr. Murray and his wife.

3

> By contrast, the Bankruptcy Code includes provisions with the potential to increase the amount that can be realized when jointly held property is sold. Section 363 of the Code provides in substance that when the requirements of section 363(h) . . . and its companion provisions are satisfied, a bankruptcy trustee can sell the jointly held property free and clear of both owners' interests, without the co-owners['] consent, leaving the nondebtor only with a right of first refusal to match the sale offer (and thus to stay in residence), and with her share of the proceeds of the forced sale.

(*Id.* at 422-24 (citations omitted).)

On March 18, 2015, Murray filed a motion to dismiss the Involuntary Petition under 11 U.S.C. §§ 303(i) and 305(a), 28 U.S.C. § 1334(c), and Federal Rule of Bankruptcy Procedure 1003(a), and for an award of attorneys' fees and damages. (App'x 45.) On June 30, 2014, Judge Gerber held a hearing on the motion to dismiss. Although Murray had not raised the possibility of a § 707(a) dismissal in his moving papers, Judge Gerber raised it during the hearing. (*Id.* at 403-06.)

On January 4, 2016, the Bankruptcy Court issued its Decision and Order dismissing the case for cause under section 707(a). (*Id.* at 418-37.) Specifically, the Bankruptcy Court found that the Law Firm was attempting to use the bankruptcy court as a judgment-enforcement mechanism in a two-party dispute, that the involuntary petition was filed solely to achieve a result not available outside of bankruptcy (i.e., the sale of the jointly held property), no other creditors existed, and there was no legitimate bankruptcy purpose for the case. It held that the involuntary petition was "an inappropriate invocation—and exploitation—of the bankruptcy system," and dismissed the case for cause. (*Id.* at 420.)

### III.   Standard of Review

This court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) to hear appeals from final judgments, orders, and decrees of a bankruptcy court. On such an appeal, a district court reviews the bankruptcy court's findings of fact for clear error, and any conclusions of law *de novo*. *In re*

4

*Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994). Because a bankruptcy court's decision to dismiss for cause is guided by equitable principles, it is reviewed for abuse of discretion. *In re Smith*, 507 F.3d 64, 73 (2d Cir. 2007); *see also In re Chovev*, 559 B.R. 339, 343-44 (E.D.N.Y. 2016) ("The determination of what constitutes 'cause' to dismiss an individual debtor's chapter 7 case is left to the discretion of the court."). "A bankruptcy court exceeds its allowable discretion where its decision (1) 'rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding,' or (2) 'cannot be located within the range of permissible decisions,' even if it is 'not necessarily the product of a legal error or a clearly erroneous factual finding.'" *In re Smith*, 507 F.3d at 73 (quoting *Schwartz v. Aquatic Dev. Grp., Inc.*, 352 F.3d 671, 678 (2d Cir. 2003) (alteration omitted)).

### IV. Discussion

Appellant makes three arguments seeking reversal: (1) the Bankruptcy Court erred in "bypassing" § 303; (2) dismissal under § 707(a) was improper because it was based on the erroneous factual finding that Appellant is the only creditor; and (3) Appellant's resort to the bankruptcy system is established by its satisfaction of § 303(b)(2) and the fact that relief is unavailable outside of bankruptcy.

#### A. *Dismissal Under § 707(a) Was Not Premature*

Appellant argues that the Bankruptcy Court's decision was procedurally improper in that it "bypassed" dismissal under § 303, which governs the filing of involuntary petitions.

First, the Bankruptcy Court in no way "bypassed" Section 303; it explicitly accepted the concession that the § 303 requirements had been met, which would result in the case moving forward as a chapter 7 case:

> Mr. Murray does not dispute that the Law Firm's petition complies with
> section 303 of the Code, which authorizes the filing of involuntary petitions, in

> certain instances, by only a single creditor. An involuntary petition (filed under section 303 of the Code), like the much more common voluntary petition (filed under section 301 of the Code), can result in an 'order for relief' which would cause a case under the Code (as applicable here, under chapter 7) then to be pending.
>
> Accordingly, the Court assumes, for the purposes of this analysis, that if there were not cause for dismissal, the involuntary case commenced by the Law Firm[] could continue.

(App'x 424.) There is no support for the argument that the Bankruptcy Court was required to formally enter an order of relief, or appoint an interim trustee (which only occurs after an order for relief is entered), before dismissing the case under § 707. Having assumed that all the requirements under § 303 had been met and the chapter 7 case would proceed, the Bankruptcy Court was within its discretion to dismiss the case under § 707(a). *See* 11 U.S.C. § 707(a) ("The court may dismiss a case under this chapter . . . for cause . . . ."). Indeed, it was Appellant that brought the case pursuant to chapter 7 in the first instance. It is not unprecedented for a bankruptcy court to simultaneously dismiss a case under § 303 and § 707(a), without first entering an order for relief. *See, e.g.*, *In re VII Holdings Co.*, 362 B.R. 663, 666 (Bankr. D. Del. 2007) ("Ultimately, this Court . . . dismissed the involuntary petition pursuant to sections 303(i), 305(a)(1), and 707(a) upon a finding that the involuntary petition was filed in bad faith and 'for no other purpose than to improperly frustrate . . . .'"); *Carpenter, Weir & Myers, Chtd v. St. Paul Fire & Marine Ins. Co.*, No. 96-4076-SAC, 1998 WL 976309, at *3 (D. Kan. Oct. 30, 1998) (noting that bankruptcy judge found simultaneously that dismissal was warranted under § 303(h)(1) and, because "the petition was filed in bad faith by the petitioning creditor," under § 707(a)).

Second, contrary to Appellant's argument, § 707 can be used to dismiss cases brought by involuntary petitions. *See In re Dinova*, 212 B.R. 437, 441 (2d Cir. BAP 1997) ("Dismissal of a

Chapter 7 case, whether voluntarily or involuntarily as to the debtor, implicates all those considerations affecting both the debtor and creditors which are at the heart of the Bankruptcy Code . . . ."); *In re Dickinson & Co.*, No. 99-1039-CH, 1999 WL 35020210, at *2–3 (Bankr. S.D. Iowa Dec. 31, 1999) (declining to dismiss involuntary petition under § 707(a) for failure to show bad faith, but noting that an "involuntary case . . . commenced under Chapter 7 . . . is . . . subject to dismissal under § 707 for cause"); *In re Valdez*, 250 B.R. 386, 394 (D. Or. 1999) (affirming dismissal of involuntary petition under § 303 and § 707 filed by non-petitioning creditor).  The language of the statute clearly contemplates § 707(a)'s application to involuntary petitions. Unlike subsection 707(a)(3), which applies only to "the debtor in a *voluntary case*," the remaining subsections are not so limited, suggesting that they apply to both voluntary and involuntary cases.  *See In re MacFarlane Webster Assocs.*, 121 B.R. 694, 696 (Bankr. S.D.N.Y. 1990) ("The wording of the statute indicates that it covers both voluntary and involuntary cases, *compare* § 707(a)(1) *with* 707(a)(3)."). "The language of the statute thus requires the bankruptcy courts to determine, on a case by case basis, whether an abuse constituting cause has occurred." *Id.* at 697 (citing *In re Sky Group Int'l., Inc.,* 108 B.R. 86, 90 (Bankr. W.D. Pa. 1989)). Furthermore, the purpose of § 707(a) is not limited to voluntary petitions.  "[N]ot to construe section 707(a) to vest the court with authority to find cause in the abuse of creditors through the continued maintenance of a bankruptcy case commenced by the filing of an involuntary petition would be to permit such abuse." *Id.* at 700.

Appellant attempts to distinguish cases where courts have granted § 707(a) dismissals of involuntary petitions as involving petitions by non-petitioning creditors, as opposed to debtors. Again, § 707(a) is not so limited and there is no reason to prevent debtors facing involuntary chapter 7 petitions filed by abusive creditors from seeking relief under § 707(a). *See In re*

*Dickinson*, 1999 WL 35020210 (considering but ultimately declining to grant § 707(a) application by debtor).

### B.   *Appellant Did Not Raise The Issue of Additional Creditors Below*

Next, Appellant argues that the Bankruptcy Court's finding that it was the sole creditor was both clearly erroneous and an insufficient basis upon which to dismiss the case under § 707(a). Appellant contends that Murray's wife is also a creditor, as is Bank of America, the mortgage holder on the apartment.

In reciting the undisputed facts, the Bankruptcy Court characterized the Law Firm as the "only creditor" in this case. (App'x 420-21.) This characterization did not occur in a vacuum. Rather, the Appellant not only conceded this fact, but affirmatively argued for it below. In a declaration submitted to the Bankruptcy Court in support of its Involuntary Petition, Appellant stated that "Petitioner is the only creditor of Alleged Debtor." (*Id.* at 11.2 ¶ 5.) In its sur-reply below, Appellant pointed out that "[Murray] admits that Petitioning Creditor is his sole creditor." (*Id.* at 445.) At no point did Appellant argue that there were other creditors. Therefore, the argument is waived for failure to raise it before the Bankruptcy Court first. *See In re GE-Ray Fabrics, Inc.*, No. 06 Civ. 13744(DC), 2007 WL 646284, at *1 (S.D.N.Y. Mar. 1, 2007). Appellant contends that its reversal of position is immaterial because the wife and Bank of America are creditors "as a matter of law." (Appellant's Reply Br. 7.) Even if this were true, it does not excuse its failure to raise it, as legal arguments are also subject to the waiver rule. *See In re Worldcom, Inc.*, No. 07 Civ. 3408 DLC, 2007 WL 2682882, at *8 (S.D.N.Y. Sept. 14, 2007). While appellate courts have discretion to consider an issue raised for the first time on appeal, Appellant has not demonstrated that "manifest injustice" would result or that there is "no need for additional fact-finding," and I decline to consider it. *See Bogle-Assegai v. Connecticut*,

470 F.3d 498, 504 (2d Cir. 2006); *In re East 36th LLC*, Nos. 13-11506 (REG), 15 Civ. 1541 (AT), 2016 WL 1117588, at *2 (S.D.N.Y. Mar. 21, 2016).

### C. *The Bankruptcy Court Did Not Abuse Its Discretion in Dismissing For Cause*

Section 707(a) of the Bankruptcy Code authorizes a court to dismiss a Chapter 7 case for "cause," and provides the three examples of "cause": (1) unreasonable and prejudicial delay by the debtor; (2) nonpayment of fees, and (3) failure to comply with the duties imposed by the debtor in § 521.[4] It is well-settled, however, that the three examples provided are "illustrative, not exclusive." *In re Smith*, 507 F.3d at 72. Courts "'must engage in case-by-case analysis in order to determine what constitutes 'cause' sufficient to warrant dismissal' and must determine 'whether dismissal would be in the best interest of all parties in interest.'" *In re Bucurescu*, 282 B.R. 124, 133 (S.D.N.Y. 2002) (quoting *Dinova*, 212 B.R. at 442). Generally, the best interest of the debtor is in "securing an effective fresh start and in the reduction of administrative expenses leaving him with resources to work out his debts." *Dinova*, 212 B.R. at 441. As to the creditor, "the issue is one of prejudice"; "[t]hey are generally not prejudiced by dismissal since they will no longer be stayed from resorting to the state courts to enforce and realize upon their claims. But creditors can be prejudiced if the motion to dismiss is brought after the passage of a

---

[4] Section 707(a) states:

(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees or charges required under chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

11 U.S.C. § 707(a). Section 521 lists the debtor's duties after commencing bankruptcy.

considerable amount of time and they have been forestalled from collecting the amounts owed to them." *Id.*; *accord In re Smith*, 507 F.3d at 72.  That is not the case here.

Judge Gerber's decision listed the following factors as bearing on his decision:

[1] This Court is the most recent battlefield in a long-standing two party dispute.

[2] This case has been brought solely as a judgment enforcement mechanism.

[3] There are no creditors competing with each other to be first in line to collect on claims.  There are no other creditors to help.  In fact, there are no other creditors.

[4] There being no other creditors, there is no need for *pari passu* distribution.

[5] Assuming, *arguendo*, that there were any fraudulent transfers that could be avoided and then recovered, the Law Firm could do so on its own, without resort to the bankruptcy court.

[6] The Law Firm has adequate remedies under nonbankruptcy law.

[7] The Law Firm is seeking bankruptcy solely to secure a benefit that it does not have under nonbankruptcy law, without a creditor community to protect whose needs might justify the invocation of bankruptcy law.

[8] No assets would be lost of dissipated in the event that the bankruptcy case did not continue.  The Law Firm's interest in the Judgment, and its ability to enforce the Judgment against the Apartment, will each remain.

[9] The debtor does not need, or want, a discharge.

(App'x 429-30.)  Appellant argues that sole-creditor actions are contemplated by § 303(b), and the Bankruptcy Court erred in concluding that inability to get relief elsewhere is not a legitimate bankruptcy objective.  However, the fact that there was only one creditor and one debtor was merely one factor the bankruptcy court considered in evaluating whether dismissal was warranted.  (*See id.* at 430 ("[T]he existence of a two-party dispute does not, by itself, warrant dismissal of a case where there are other legitimate bankruptcy objectives to achieve . . . .").)

It was also not an abuse of discretion for the Bankruptcy Court to consider the fact that state law remedies for enforcing the Judgment are available to Appellant outside of bankruptcy.

10

*See Dinova*, 212 B.R. at 441; *see also C-TV 9th Ave. P'ship v. Norton Co.*, 113 F.3d 1304 (2d Cir. 1997) (affirming dismissal of chapter 11 case for cause where bankruptcy court found that petition was filed as "litigation tactic" and dispute could be "fully resolved in non-bankruptcy forum"). Appellant argues that the exact remedy it seeks—sale of the Apartment under § 363 of the Bankruptcy Code—is not actually available under New York law. But this does not change the fact that New York law provides the means by which Appellant can enforce its judgment against Murray, namely, the ability to execute on Murray's interest in the apartment and cause it to be sold. The fact that Murray's interest is worth less and perhaps far less by virtue of the wife's shared interest, and New York's respect for tenancies in the entirety, does not change the fact that New York law has provided for and defined the scope of available remedies to judgment holders. In other words, New York law provides Appellant with a remedy and that is all to which Appellant is entitled. Appellant's inability to execute on the wife's interest under New York law does not justify relief in bankruptcy.

### V. Conclusion

For the foregoing reasons, and the reasons stated in the Bankruptcy Court's thorough and well-reasoned decision, the decision is AFFIRMED and the case is DISMISSED. The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

Dated: March 31, 2017
New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge

11